1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

ALICIA HOFFMAN and MARKET TRADING, INC., individually and on behalf of all other persons similarly situated and on behalf of the general public,

CASE NO: 06-CV-1021 W (BLM)

12
13
14
15

Plaintiffs,

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

16
17

v.

18

CINGULAR WIRELESS, LLC,

19

Defendant.

20
21

        Plaintiffs Alicia Hoffman and Market Trading, Inc., (collectively, "Plaintiffs")

22

commenced this putative class action in the San Diego Superior Court in April 2006.

23

Plaintiffs assert state-law causes of action for breach of contract, deceptive trade

24

practices in violation of the Consumers Legal Remedies Act, and unlawful,

25

fraudulent and unfair business acts in violation of the Business & Professions Code

26

§17200, *et seq.*  These claims are premised on defendant Cingular Wireless's alleged

27

misrepresentations regarding the conditions under which customers' accrued

28

"rollover" minutes expire.

On May 10, 2006, Cingular removed the action to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Cingular now seeks to compel arbitration under an arbitration provision that includes a class-action waiver.  Plaintiffs oppose the motion arguing that the class-action waiver renders the arbitration agreement unconscionable under California law.  The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).  For the reasons stated below, the Court **DENIES** Cingular's motion.

## I.    BACKGROUND

In February 2004, plaintiff Alicia Hoffman entered into a Wireless Service Agreement (the "Agreement") with Cingular for cellular telephone service.  (Compl. at ¶ 10.)  Hoffman's service plan provided 850 "anytime minutes" and included Cingular's "rollover" feature that allowed unused anytime minutes to roll over to the next month.  (Id. at ¶¶ 2, 10.)  The monthly service fee was $59.99.  (Id. at ¶ 10.)  Hoffman alleges that the terms of Cingular's monthly plan provided that rollover minutes would only expire under three well-defined circumstances: (1) after twelve months; (2) upon default; or (3) if she switched to a non-rollover plan.  (Id. at ¶ 11.)

Hoffman's Agreement included an arbitration provision located approximately 5/6 of the way down the second page in what appears to be four or five point font.  (See Plt.'s P. & A., at 4:9–10; Decl. of Neil Berinhout, Ex. "A" at 2.)   The provision covers "all disputes and claims arising out of or relating to this Agreement, or to any prior oral or written agreement for equipment or services between Cingular and you." (Decl. of Neil Berinhout, Ex. "A" at 2.)  Under the agreement, customers may pursue claims in arbitration or small claims court.  (Id.)  If the customer chooses arbitration, "Cingular will pay all AAA filing, administration and arbitrator fees" unless the arbitrator finds that the claim or relief sought is frivolous, and Cingular is obligated to "reimburse [the customer] for [his or her] reasonable attorneys' fees and expenses incurred for the arbitration" if the customer recovers the amount of his or her demand or more.  (Id.)  The provision also states that "YOU AND CINGULAR

MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding." (Id., emphasis in original.)  If, however, this class-action waiver is "found to be unenforceable, then the entirety of [the] arbitration clause shall be null and void." (Id.)

On October 7, 2004, Hoffman added plaintiff Market Trading, Inc., to her account and continued to use her cell phone as she had before.  (Compl. at ¶ 12.)  Because the 850 anytime minutes provided by Hoffman's plan far exceeded her needs, by October 2005, Hoffman had accumulated more than 10,000 rollover minutes.  (Id.)  Accordingly, in October 2005, Hoffman contacted Cingular to switch to a rollover plan with fewer anytime minutes so she could begin to use the accumulated minutes.  (Id.)  Hoffman alleges that Cingular's customer service representative stated that she would not be allowed to keep all of the unused minutes because she was switching to a rate plan with fewer anytime minutes.  (Id.)  The customer service representative further stated that Cingular would allow Hoffman to transfer only the number of rollover minutes equivalent to her new plan's monthly anytime minute allowance.  (Id.)  In other words, if Hoffman's new plan provided only 500 monthly anytime minutes, she would only be allowed to transfer 500 of her unused rollover minutes to the new plan.

On April 6, 2006, Plaintiffs filed this lawsuit in the San Diego Superior Court. The lawsuit is brought on behalf of Plaintiffs and "all persons who subscribed to [Cingular's] cellular telephone rate plan that included the 'rollover' minutes feature in the state of California from March 14, 2002, until March 14, 2006." (Compl. at ¶ 26.)  Plaintiffs allege, among other things, that Cingular engaged in the business practice of intentionally misrepresenting the conditions under which the rollover minutes would expire.  (Id. at ¶¶ 49–50.)  Plaintiffs further allege that the case involves "a large number of individual customers with many relatively small claims." (Id. at ¶ 32(b).)

On May 10, 2006, Cingular removed this action, and Plaintiffs' subsequent motion to remand was denied.  Cingular now seeks to compel arbitration and thereby dismiss the proposed class litigation.[1]

## II.   DISCUSSION

### A.   Legal Standard.

The Federal Arbitration Act ("FAA") governs disputes involving written contracts that touch upon interstate commerce or maritime law.  9 U.S.C. § 1. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In interpreting an arbitration agreement, courts must give due regard to the federal policy favoring such agreements, and thus any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983); Quakenbush v. Allstate Ins. Co., 121 F.3d 1372, 1380 (9th Cir. 1997).

There is no dispute that Cingular's written Agreement involves interstate commerce, and thus is covered by the FAA.  Instead, the dispute centers on whether the class-action waiver renders the arbitration provision unconscionable under California law and, if so, whether the FAA preempts California law.

### B.   Unconscionability.

Although the FAA reflects a policy favoring arbitration agreements, such agreements are nevertheless subject to all defenses to enforcement that apply to contracts generally.  See 9 U.S.C. § 2; Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).  Thus, in evaluating the validity of an arbitration agreement, a court may apply generally applicable contract defenses, including unconscionability, to invalidate the agreement.  Laster v. T-Mobile USA, Inc., 407

---

[1]  Included with Cingular's motion to compel arbitration is a request for judicial notice. Cingular's request is granted.

1   F.Supp. 2d 1181, 1187 (SD Cal. 2005) (citing Ticknor v. Choice Hotels Int'l, Inc.,

2   265 F.3d 931, 937 (9th Cir. 2001)).

3       Unconscionability under California law consists of a procedural and

4   substantive element.  Armendariz v. Foundation Health Psychcare Servs., Inc., 24

5   Cal.4th 83, 114 (2000).  Procedural unconscionability focuses on "oppression" or

6   "surprise" that may result from unequal bargaining power between the contracting

7   parties, while the substantive element focuses on whether the contract terms are

8   overly harsh or one-sided.  Discover Bank v. Superior Court, 36 Cal.4th 148, 160

9   (2005).  While both procedural and substantive unconscionability must be present to

10  render a contract unenforceable, they "need not be present in the same degree."

11  Armendariz, 24 Cal.4th at 114.  Rather, a sliding scale approach is used so that the

12  more substantively oppressive the contract term, the less procedural

13  unconscionability is required to find the contract unenforceable, and vice versa.  Id.

14      In Discover Bank, the California Supreme Court evaluated whether a class-

15  action waiver in an arbitration provision was unconscionable.  Plaintiff opened a

16  credit card account with Discover in April 1986.  In 1991, Discover amended the

17  terms of the customer agreement to add an arbitration clause that included a class-

18  action waiver.  Ten years later, plaintiff filed a putative class action alleging that

19  Discover made misrepresentations regarding the imposition of late fees and finance

20  charges.

21      Discover moved to compel arbitration and dismiss the class action under the

22  terms of the arbitration provision.  Plaintiff opposed the motion arguing that the

23  class-action waiver was unconscionable.  The Court began its analysis by reiterating

24  the justifications for class-action litigation:

25      Frequently numerous consumers are exposed to the same dubious
        practice by the same seller so that proof of the prevalence of the
26      practice as to one consumer would provide proof for all.  Individual
        actions by each of the defrauded consumers is often impracticable
27      because the amount of individual recovery would be insufficient to
        justify bringing a separate action; thus an unscrupulous seller retains the
28

- 5 -                                         06CV1021

benefits of its wrongful conduct.  A class action by consumers produces
several salutary by-products, including a therapeutic effect upon those
sellers who indulge in fraudulent practices, aid to legitimate business
enterprises by curtailing illegitimate competition, and avoidance to the
judicial process of the burden of multiple litigation involving identical
claims.  The benefit to the parties and the courts would, in many
circumstances, be substantial.

Discover Bank, 36 Ca.4th at 156 (citing Vasquez v. Superior Court, 4 Cal.3d 800,
808 (1971)).  In light of these justifications, the Court was concerned with class-
action waivers that act as "exculpatory contracts . . . to the extent they operate to
insulate a party from liability that otherwise would be imposed under California law."
Id. at 161.  The Court clarified, however, that not all class-action and arbitration
waivers are exculpatory clauses.  Id.  "But because . . . damages in consumer cases
are often small and because '[a] company which wrongfully exacts a dollar from each
of millions of customers will reap a handsome profit' . . . the class action is often the
only effective way to halt and redress such exploitation."  Id. (citations omitted).
Accordingly, the Court held that class-action waivers are unconscionable when
found in "a consumer contract of adhesion in a setting in which disputes between the
contracting parties predictably involve small amounts of damages, and when it is
alleged that the party with the superior bargaining power has carried out a scheme to
deliberately cheat large numbers of consumers out of individually small sums of
money."  Id. at 162–163.

### 1.    Cingular's arbitration agreement is procedurally unconscionable.

The first issue is whether Cingular's arbitration provision is procedurally
unconscionable.  For the following reasons, the Court finds that it is.

Cingular's website states that it is the "largest wireless company in the United
States, with more than 54 million subscribers."  (See http://www.cingular.com/
about/company_overview.)  Additionally, the Agreement at issue in this case was
drafted by Cingular, who admits that the arbitration provision is part of a form

contract using uniform terms.  (Def.'s P. & A., at 5:26–27; Decl. of Neal S. Berinhout, at ¶ 4.)  Based on these facts, Cingular's Agreement has all the hallmarks of a contract of adhesion; it is a form contract prepared by the party with superior bargaining power and given to the subscribing party on a "take it or leave it" basis. See Discover Bank, 36 Cal.4th at 160 ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'").

Cingular, however, argues that Plaintiffs had market alternatives because the service agreements of four wireless companies either do not include arbitration provisions or do not include a class-action waiver.  Cingular further contends that California law precludes a finding of procedural unconscionability where there are market alternatives available to the consumer.  The Court disagrees for two reasons.

First, California courts have reached different conclusions regarding the impact of market alternatives.  While two of the cases cited by Cingular support the conclusion that market alternatives preclude procedural unconscionability, other cases disagree.[2]  See Villa Milan Homeowners Assn. V. Il Davorage, 84 Cal.App.4th

_____

[2] Although Cingular cited four cases, two of the cases do not support the contention that the availability of market alternatives precludes a finding of procedural unconscionability.  In Crippen v. Central Valley RV Outlet, Inc., 124 Cal.App.4th 1159 (2004), plaintiff argued that an arbitration clause in a purchase contract for a recreational vehicle was procedurally unconscionable solely because defendant used a form contract.  While the court acknowledged that market alternatives were relevant, the decision was primarily based on the parties' relative bargaining power: "[there] is no reason in this case to conclude that plaintiff lacked power to bargain.  In general, nothing prevents purchasers of used vehicles from bargaining with dealers, even though dealers use form contracts, and nothing in the record shows that plaintiff could not bargain in this case." Id. at 1165-1166.

Nor is the Court persuaded by Wayne v. Staples, Inc., 135 Cal.App.4th 466 (2006), which involved a challenge to the price charged for shipping insurance.  Wayne is factually distinguishable from cases such as this, where the challenged term is printed in 4 or 5 point font on the second page of a boilerplate contract.  Wayne is also distinguishable because it did not involve a challenge to a class-action waiver, and thus Discover Bank's concern about exculpatory contracts was not implicated.

819, 827 (2000) ("[I]n a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere."); Szetela, 97 Cal.App.4th at 1100 ("[W]hether [plaintiff] Szetela could have found another credit card issuer who would not have required his acceptance of a similar clause is not the deciding factor."). And while the California Supreme Court has not yet resolved the apparent conflict, it is notable that Szetela was one of the two cases that Discover Bank relied heavily upon in finding the class-action waiver unconscionable. See Discover Bank, 36 Cal.4th at 159–160. Moreover, among the exhibits attached to Cingular's moving papers are selected portions of the appellate record from Discover Bank. The exhibits establish that the defendant raised the issue of market alternatives, which the Supreme Court ignored in its analysis. While Discover Bank cannot be interpreted as resolving the conflict, the Court is nevertheless persuaded by the California Supreme Court's reliance on Szetla and the fact that the existence of market alternatives did not preclude the finding that Discover's arbitration clause was procedurally unconscionable.

Second, aside from the split among the state appellate courts, Cingular's argument has now been rejected by three cases within this Circuit. In Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003), the Ninth Circuit interpreted the California Supreme Court's decision in Armendariz, 24 Cal.4th 83, as rejecting the "contention that availability of alternative sources of supply affects the procedural unconscionability analysis." Thereafter, the district court in Laster found that even "if a court were to consider the availability of alternative sources of supply, the court must evaluate the consumer's opportunity to negotiate the arbitration provision." Id. 407 F.Supp.2d at 1188. Finally, recently the district court in Winig v. Cingular Wireless LLC, – F.Supp.2d– 2006 WL 2766007, at *4 (N.D.Cal. Sept. 27, 2006), rejected Cingular's argument for the same reasons expressed in this decision. Accordingly, the Court finds that the availability of market alternatives does not

preclude the finding that Cingular's arbitration provision is procedurally unconscionable under Discover Bank.

> ### 2. Cingular's arbitration agreement is substantively unconscionable.

Because the Agreement at issue is a consumer contract, Cingular's arbitration provision is substantively unconscionable under Discover Bank if (1) it is in "a setting in which disputes between the contracting parties predictably involve small amounts of damages" and (2) this lawsuit involves allegations of a "scheme to deliberately cheat large numbers of consumers out of individually small sums of money." Discover Bank, 36 Cal.4th at 162–163; see also Laster, 407 F.2d at 1190.

The parties do not dispute that this lawsuit involves allegations that Cingular engaged in a scheme to deliberately cheat large numbers of customers out of their "rollover minutes." (See Compl. at ¶¶ 48–52.) Instead, the parties disagree about whether the damages at issue are small under Discover Bank. Additionally, Cingular argues that regardless of the size of damages, its arbitration agreement is not substantively unconscionable because it obligates Cingular to pay certain costs of arbitration and, under certain circumstances, reimburse the customer's reasonable attorney's fees.

> #### a. Plaintiffs' damages are small.

Cingular argues that Plaintiffs' damage claims are not small within the meaning of Discover Bank. To support this argument, Cingular calculates Plaintiffs' maximum damages based on the request in the Complaint for the recovery of "all purchase monies for . . . the cellular telephone plan service fees paid" by Plaintiffs. (Def.'s P. & A., at 8:28–9:1.) Because Plaintiff Hoffman was a customer from February 2004 until July 2006, Cingular calculates her alleged damages at $2,825, which Cingular points out are nearly 100 times greater than the $29 at issue in Discover Bank. Additionally, Cingular relies on Provencher v. Dell, Inc., 409

F.Supp.2d 1196, 1202 (C.D. Cal. 2006), which it contends found that a damage claim for $1,600 was not small under Discover Bank.

The Court is not persuaded by Cingular's argument for several reasons.  First, assuming Cingular's approach to the damage issue is correct, the Court finds that $2,875 is small.  In Cohen v. DirecTV, 142 Cal.App.4th 1442 (2006), decided after Discover Bank, plaintiff filed a lawsuit alleging that DirecTV covertly degraded certain high-definition transmissions in violation of various California statutes. DirecTV moved to compel arbitration, and plaintiff opposed the motion arguing that the class-action waiver was unconscionable.  DirecTV countered by arguing that the amount at stake  — the $10.99 monthly charge and $1,000 in equipment purchased by the customers — was not small under Discover Bank.  The Court of Appeal disagreed:

> DirecTV asserts that the individual stakes are higher in this case, because the damages Cohen alleged included, in addition to the $10.99 monthly fee, the cost for the decoder box the consumer must purchase in order to receive DirecTV's high definition package — an expense amounting, in some instances, to more than $1,000. We are not persuaded that this additional element of damages in any way affects the foundational premise that DirecTV's class action waiver occurs in a setting where disputes between the contracting parties "predictably involve small amounts of damages." While $1,000 is not an insignificant sum, many consumers of services such as those offered by DirecTV may not view that amount as sufficient "to warrant individual litigation," and certainly it is not sufficient to obtain legal assistance in prosecuting the claim.

Id. at 1452 (citing Discover Bank, 36 Cal.4th at 157).  Thus, Cohen stands for the proposition that in evaluating the damages, courts do not only consider the amount in question, but also whether the amount is sufficient to "warrant individual litigation" and "to obtain legal assistance in prosecuting the claim."  Id.

Cohen's approach is consistent with the concerns underlying Discover Bank, which were to prevent the party of superior bargaining power from imposing contract terms that effectively insulate it from liability.  While $2,875 may be sufficient to

warrant litigation and retain counsel in some cases, it is clearly not sufficient, for example, in cases such as this involving claims for deceptive trade practices where the plaintiff will likely incur significant costs in discovery and investigation.

Second, Cingular's reliance on Provencher v. Dell is unavailing.  Although Provencher discusses California law, the district court held that Texas law, not California law, governed the case.  Id. at 1201.  Additionally, while Provencher acknowledged that plaintiff "spent over $1,600 for [his] Dell computer," the district court's determination that the damages were not small was based on the entire class's alleged damages, not the $1,600 that plaintiff paid for the computer.  See Id. at 1202 ("Obviously this case involves a significant amount of money, most likely hundreds of millions of dollars.").  Indeed, the Court of Appeal in Cohen criticized Provencher for basing its determination on the class's damages.  See Cohen, at 1455 n. 13 ("We do not find Provencher's analysis compelling, particularly as to the 'significant amount of money, most likely hundreds of millions of dollars,' involved, because the court focuses on aggregate amounts, not individual amounts.").

Third, although the Complaint includes a request for the recovery of all monthly fees, Plaintiffs state in the opposition that the damages sought are for the lost value of confiscated "rollover minutes" or "anytime minutes." (Pl.'s P. & A., at 2:14–18, 9:23–24.)  Because unused "rollover minutes" expire after 12 months, Plaintiffs assert that their individual damages are limited to 12-months worth of unused minutes, which totals $714.  (Id. at 2:14–18, 10:3–8.)  This amount is less than the damages at issue in Cohen.  Accordingly, the Court finds that Plaintiffs' damages are small under Discover Bank.

### b.   *Cingular's arbitration agreement is substantively unconscionable notwithstanding the obligation to pay certain costs.*

Cingular contends that its arbitration agreement is not substantively unconscionable because consumers are "not required to pay greater costs than they would have to bear in court and the arbitrator is not prohibited from awarding a

prevailing plaintiff his or her attorneys' fees."  (Def.'s P. & A., at 10:3–5.)

Cingular's argument was addressed and rejected in <u>Discover Bank</u>: "Nor are we persuaded by the rationale stated by some courts that the potential availability of attorneys fees to the prevailing party in arbitration... ameliorates the problems posed by such class action waivers." 36 Cal.4th at 162 (citations omitted); <u>see also</u> <u>Laster</u>, 407 F.Supp.2d at 1191 (rejecting argument that payment of arbitration costs and reasonable attorney's fees precludes finding of substantive unconscionability). Because the issue is governed by California law, the Court finds <u>Discover Bank</u> controls.  Thus, Cingular's arbitration provision is unconscionable.

**C.  Preemption.**

Cingular's final argument is that if its arbitration provision is unconscionable under <u>Discover Bank</u>, the FAA preempts California law.   (Def.'s P. & A., at 14:8–10.)  Cingular's argument is without merit.

By its express terms, the FAA provides that arbitration agreements are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; <u>Ingle</u>, 328 F.3d at 1170 ("[W]hen grounds exist 'at law or in equity for the revocation of any contract,' courts may decline to enforce such contracts.") (citing <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 683 (1996)).  This prevents discrimination against arbitration agreements by requiring that they are placed on equal footing with other contracts.  <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 293 (2002).

California's doctrine of unconscionability is a generally applicable defense to contracts.  <u>See</u> <u>Ingle</u>, 328 F.3d at 1170.  Accordingly, California's unconscionability doctrine is not preempted by the FAA.  <u>Ting</u>, 319 F.3d at 1152; <u>Laster</u>, 407 F. Supp.2d at 1192 ("The concept of unconscionability . . . may be employed as a principle of general applicability to invalidate an arbitration agreement without contravening § 2 of the FAA.").

**III.  <u>CONCLUSION AND ORDER</u>**

In light of the foregoing, the Court finds that the class-action waiver contained in Cingular's arbitration provision is unconscionable under California law.  Because the arbitration provision specifically provides that it is null and void if the class-action waiver is unenforceable, Cingular's motion to compel arbitration is  **DENIED**.

**IT IS SO ORDERED.**

DATED:  October 26, 2006

_____
Hon. Thomas J. Whelan
United States District Judge