UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HOFFMAN, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>CINGULAR WIRELESS, LLC, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. 06-CV-1021 W (BLM)<br><br>**ORDER (1) GRANTING IN-PART AND DENYING IN-PART DEFENDANT'S MOTION TO DISMISS (Doc. No. 58), AND (2) DENYING DEFENDANTS' MOTION TO STRIKE (Doc. No. 57)** |

　　　　Plaintiffs Alicia Hoffman and Market Trading, Inc. ("Plaintiffs") are suing Defendant Cingular Wireless, LLC, for breach of contract, violation of California Civil Code §§ 1750 *et seq.*, and violation of California Business and Professions Code §§ 17200, *et seq.* Pending before this Court is Cingular's motion to dismiss Plaintiffs' complaint for failure to state a claim, and motion to strike certain factual and damage allegations.

　　　　The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons stated below, the Court **GRANTS** Cingular's motion to dismiss (Doc. No. 58) and **DENIES** as moot the motion to strike (Doc. No. 57).

## I. BACKGROUND

The factual background of this case is well known to the parties and has been discussed extensively in this Court's prior orders. It need not be repeated in full here.

According to the complaint, in February 2004, Plaintiff Alicia Hoffman entered into a Wireless Service Agreement (the "Agreement") with Cingular for cellular telephone service. (*Compl.*, ¶10.) Hoffman's service plan provided 850 "anytime minutes" and included Cingular's "rollover" feature that allowed unused anytime minutes to roll over to the next month. (*Id.*, ¶¶2, 10.) The monthly service fee was $59.99. (*Id.*, ¶10.) Hoffman alleges that under the Agreement, rollover minutes would only expire under three well-defined circumstances: (1) after twelve months; (2) upon default; or (3) if she switched to a non-rollover plan. (*Id.*, ¶11.)

Plaintiff alleges that on October 7, 2004, she added Plaintiff Market Trading, Inc. to the account. (*Id.*, ¶12.) By October 2005, Plaintiffs had accumulated more than 10,000 rollover minutes. (*Id.*)

Sometime in October 2005, Hoffman contacted Cingular to switch to a service plan with fewer anytime minutes so she could begin to use her accumulated rollover minutes. (*Id.*, ¶13.) According to Hoffman, Cingular's customer service representative stated that Hoffman would not be allowed to keep all of the unused minutes if she switched to a service plan with fewer anytime minutes. (*Id.*) Instead, Hoffman would be allowed to transfer only the number of rollover minutes equal to her new service plan's monthly anytime-minute allowance. (*Id.*) In other words, if Hoffman's new plan provided only 500 monthly anytime minutes, she would only be allowed to transfer 500 of her 10,000 unused rollover minutes.

On April 6, 2006, Plaintiffs filed this class-action lawsuit in the San Diego Superior Court. The complaint includes three causes of action for (1) breach of contract, (2) violation of California Civil Code §§ 1750, *et. seq,* (the Consumers Legal Remedies Act or "CLRA"), and (3) violation of California Business and Professions Code §§ 17200, *et. seq* (the "UCL"). Defendant's motion seeks to dismiss all causes of

action for failure to state a claim. Additionally, Defendant's seeks to strike certain factual and damage allegations.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss Under Rule 12(b)(6).

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court recently explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964–65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the complaint quotes

only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

### III. CINGULAR'S MOTION TO DISMISS

#### A. The Complaint Adequately Alleges a Right to Change Rate Plans.

Cingular contends that the complaint's allegations establish that Plaintiffs attempted to change rate plans before the Agreement expired. Cingular argues, however, that the complaint fails to explicitly allege a "contractual right to subsequently switch rate plans in the midst of their contract...." Because Plaintiffs fail to allege a contractual right to change plans before the Agreement expired, Cingular contends that the UCL and breach of contract claims fail. (*Mot. to Dismiss*, 4:16–18.)

Plaintiffs counter by arguing that the complaint sufficiently alleges that "Plaintiff had the contractual right to change rate plans during the term of the contract with Defendant." (*Opp.'n to Mot. to Dismiss*, 10:10–11.) Based on the standard applicable to this motion, the Court agrees with Plaintiffs.

The complaint alleges that "On February 18, 2004, [Hoffman] entered a contract with Cingular, under which she purchased a cellular phone and subscribed to Cingular's monthly plan that provided 850 'anytime minutes' with the advertised 'rollover' feature, for a fee of $59.99 per month." (*Compl.*, ¶10.) Plaintiffs also allege that before entering into the Agreement, "Hoffman reviewed the terms of Cingular's monthly plan which represented that unused 'anytime minutes' would expire only under three well-defined circumstances: (1) after twelve months; (2) upon default; or (3) if she changed to a non-rollover plan." (*Id.*, ¶11, emphasis added.)

The Agreement is not attached to the complaint, and the parties did not attach a copy of the document to any of the papers filed in connection with the motion. It is,

therefore, impossible for the Court to determine whether Plaintiffs had a contractual right to change rate plans before the Agreement expired.

Additionally, on a motion to dismiss, all reasonable inferences must be decided in Plaintiffs' favors. Thus, although the complaint does not expressly allege that Plaintiffs could change rate plans before the Agreement expired, the allegations suggest that Hoffman had such a right.

### B.      Plaintiffs Lack Standing Under the CLRA.

Cingular argues that Plaintiffs lack standing to pursue the CLRA because the Agreement was not entered in Hoffman's name. The Court agrees.

The CLRA makes unlawful certain acts "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770(a). A "consumer" is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Id. § 1761(d). Accordingly, only a consumer may pursue a violation of the CLRA. Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003).

Cingular argues that, contrary to the complaint's allegations, Hoffman did not open the service plan in her name, but instead opened the account in the name of Plaintiff Market Trading, Inc. (*Mot. to Dismiss*, 10:21–24.) Cingular's argument is based on the account's initial billing record that is attached to the Declaration of Timothy A. Horton, and which Cingular argues the Court may consider under the "incorporation by reference" doctrine. (*Id.*)

Plaintiffs argue that the Court should not consider the billing statement because the incorporation by reference doctrine does not apply. Plaintiffs acknowledge that the doctrine applies where a document's "contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." (*Opp.'n to Mot. to Dismiss*, 16:7–9, citing Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005). Plaintiffs then state that "Plaintiff vigorously challenges

Defendant's characterization and factual assumption raised by Defendant's argument that Plaintiff Alicia Hoffman did not open a personal account in February 2004." (*Id.*, 16:9–11.)

Although Cingular's motion cites Rule 12(b)(6), because standing involves the Court's subject-matter jurisdiction, the motion must be evaluated under Federal Rule of Civil Procedure 12(b)(1). See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (Applying the Rule 12(b)(1) standard to a motion challenging subject-matter jurisdiction on ripeness ground, even though moving party incorrectly identified Rule 12(b)(6).). Unlike a 12(b)(6) motion, in deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may review matters outside the complaint in order to resolve jurisdictional fact issues: a "Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." Id. (citing Thornhill Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)).

Here, the parties have provided the Court with two documents, both of which establish that Plaintiff Hoffman was not the account holder. The first document is Cingular's billing record, which identifies Market Trading as the account holder. The second document, provided by Plaintiffs, is a "true and correct copy" of the sales receipt from the purchase of the telephone and service plan. (*Hoffman Decl.*, ¶3, Ex. 3.[1]) The receipt identifies the buyer as another business, the Law Offices of Alicia Hoffman. (*Id.*, Ex. 1 at 1.) Because the documents contradict Hoffman's contention that she purchased the telephone and service plan for her personal use, Plaintiffs lack standing to pursue the CLRA claims.[2]

---

[1] The Court further notes that Plaintiffs' opposition includes five exhibits, all attached to Hoffman's declaration. None of the exhibits identify Hoffman as the account holder.

[2] Because the documents establish that Hoffman is not the account holder, Hoffman also lacks standing to pursue the breach of contract claim.

### C. Plaintiffs Fail to Allege the Requisite Harm.

Citing Plaintiffs' pattern of cellular telephone usage, Cingular next argues that Plaintiffs have failed to adequately allege the requisite harm for each of their claims. According to Cingular, in order for Plaintiffs to have accrued 10,000 rollover minutes (as alleged in the complaint), Plaintiffs would have only been using, on average, 17 anytime minutes per month. (*Reply to Mt. to Dismiss*, 2:15–17.) Cingular thus argues that it is implausible that Plaintiffs would have ever used any of their 10,000 accumulated rollover minutes, and accordingly Plaintiffs could not have been harmed by Cingular's alleged threat to confiscate the accumulated minutes. (*Id.*)

As an initial matter, the Court notes that Plaintiffs do not dispute that each of the three claims requires Plaintiffs to allege harm. Plaintiffs argue, however, that it is "not unreasonable to believe that Plaintiffs could have used more than 850 Anytime minutes per month...." (*Opp.'n to Mt. to Dismiss*, 12:22–24.[3]) But the complaint's factual allegations simply do not support Plaintiffs' argument.

The complaint's allegations confirm that in the 12-month period before Plaintiffs contacted Cingular to change rate plans, Plaintiffs used an average of approximately 17 anytime minutes per month, or 200 minutes for the entire period.[4] Based on this usage pattern, Plaintiffs would not have used any accumulated minutes unless Cingular offered a rate plan with 16 anytime minutes per month. The complaint acknowledges, however, that Cingular's smallest rate plan provided 450 anytime minutes per month. (*Compl.*, ¶19.) Thus, even under Cingular's smallest plan, Plaintiffs would have accrued, on

---

[3] Plaintiffs also allege that they "need not prove that they would have used the entire balance of their accrued Rollover minutes." (*Opp.'n to Mt. to Dismiss*, 12:22–24.) The Court agrees. But as Plaintiffs concede later in their brief, they must be able to prove that "Plaintiffs would have used at least 1 of the" accrued minutes. (*Id.*, 12:24–25.)

[4] These figures are taken from complaint's allegations that Plaintiffs' service plan provided 850 anytime minutes (*Compl.*, ¶10), and that by "October 2005 [Plaintiffs] had accumulated approximately 10,000 unused 'rollover minutes'" (*Id.*, ¶12). At 850 minutes per month, Plaintiffs had 10,200 anytime minutes per year (850 x 12). Thus, if Plaintiffs accrued 10,000 rollover minutes in 12 months, Plaintiffs could only have used 200 anytime minutes for the year or approximately 17 per month (200/12=17). (See also *Mot. to Dismiss*, 8:1 f.n.9.)

1  average, 433 minutes per month, and would have never used a single accrued rollover
2  minute.
3       Nor does the complaint as currently drafted include any facts that would allow
4  the Court to reasonably infer that after changing rate plans, Plaintiffs were going to
5  significantly increase the number of anytime minutes used.  In short, the complaint's
6  allegations are not "enough to raise [Plaintiffs'] right to relief above the speculative
7  level."  Twombly, 127 S.Ct. at 1964–1965.
8       Because Plaintiffs have failed to plead facts supporting the contention that they
9  were harmed by Cingular's conduct, Plaintiffs have failed to state a claim.
10
11 **IV.  CONCLUSION AND ORDER**
12      For the foregoing reasons, the **GRANTS** Cingular's motion to dismiss (Doc. No.
13 58) and **DISMISSES** Plaintiffs' claims **WITHOUT PREJUDICE**.  Any amended
14 complaint that addresses the defects discussed above must be filed on or before **October
15 3, 2008**.
16      In light of the foregoing, Cingular's motion to strike is **DENIED** as moot.
17
18 **IT IS SO ORDERED.**
19
20 DATED:  September 4, 2008
21
22                                                       Hon. Thomas J. Whelan
23                                                       United States District Judge
24
25
26
27
28

06cv1021w